## Commonwealth v. Sassaman

*Frederick J. Bertolet,* for Commonwealth.
*Edward Youngerman,* for claimant.

HESS, J., October 14, 1947.—This matter is before us upon exceptions to the report of the auditor appointed by this court to make distribution of funds in the hands of the guardian of Julius Sassaman, an incompetent.

Julius Sassaman was committed by this court as a patient to the Wernersville State Hospital upon proceedings instituted to have him adjudged an insane person. According to the findings of fact of the learned auditor, Julius Sassaman has been a patient at the Wernersville State Hospital from December 23, 1939, and now continues there as a patient.

The Berks County Trust Company of Reading, Pa., on May 10, 1940, was appointed guardian for the estate of said incompetent. Apparently the principal asset belonging to his estate consisted of a parcel of real estate located at No. 225 North Thirteenth Street, Reading, Pa. Under date of May 6, 1946, the guardian filed a petition for the sale of this real estate at private sale, and under date of June 8, 1946, the property was sold. On June 13, 1946, this court entered an order approving the sale.

Rose Sassaman, wife of Julius Sassaman, obtained an order of support in the Court of Quarter Sessions of Berks County against Sassaman to no. 233, June sessions, 1933, prior to the date of his having been adjudged incompetent. On August 28, 1946, after the sale of the real estate was approved by this court but prior to the delivery of the deed therefor, Rose Sassaman caused the arrearages on said support order to be reduced to a judgment which was entered to no. 151, August term, 1946, J. D., in the sum of $4,774.70.

The guardian filed an account of moneys received from the sale of certain personal property and from the proceeds of the sale of real estate at No. 225 North Thirteenth Street, Reading, Pa. This account was confirmed absolutely on January 25, 1947. Paul H. Price, Esq., was appointed auditor in this matter on January 31, 1947.

Thereafter, the learned auditor, after due notice by advertising, held a hearing on March 5, 1947, at which hearing the Commonwealth of Pennsylvania presented a claim for the care and maintenance of Julius Sassaman as a patient of the Wernersville State Hospital, from December 23, 1939, to November 3, 1946, in the amount of $2,290.98. A claim was also presented in behalf of Rose Sassaman upon a certificate of judgment at no. 151, August term, 1946, J. D., in the sum of $4,774.70, representing the arrearages on account of the support order. Other debits and credits were presented which do not enter into this matter.

According to the schedule of distribution submitted by the auditor, the fund for distribution to the two claimants amounts to approximately $2,400. Should the claim of the wife receive preference, the claim would wipe out the entire fund. Should the claim of the Commonwealth be entitled to preference it, too, would almost deplete the fund. The learned auditor concluded that whatever balance remains after the

payment of all costs and expenses should be distributed to the Commonwealth of Pennsylvania on account of its claim.

The question now before us upon the exceptions of claimant, Rose Sassaman, involves a determination of whether or not the Commonwealth's claim for maintenance has priority as against the wife's claim for support.

The Commonwealth bases its claim for priority upon the Act of June 1, 1915, P. L. 661, secs. 1 and 6, 71 PS §§1781, 1786, which are as follows:

"Section 1. . . . whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided.

"Section 6. All claims by the Commonwealth for maintenance, as herein provided, in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors."

The wife, Rose Sassaman, bases her claim upon the judgment entered upon the arrearages arising out of the nonsupport order against Julius Sassaman. This judgment was released by claimant as against the real estate but not as against the fund realized from the sale of the real estate. In the event that the judgment is a claim which by law is given preference, then, apparently, under the provisions of the Act of June 1, 1915, supra, Rose Sassaman's claim would be entitled to precedence over the claim of the Commonwealth.

It will be noted that the judgment in question was entered of record after this court ordered the sale of the real estate to be confirmed. It appears also that the

judgment became a lien, if at all, more than six and one half years after the incompetent was adjudged to be an insane person or a lunatic.

Wright's Appeal, 8 Pa. 57, holds that the creditors of a lunatic who obtain judgments after inquisition do not acquire thereby any right of priority over other creditors. The case cited, of course, was decided in accordance with the provisions of an act of assembly many years prior to the act of assembly now in question. At page 62, however, the court stated:

"If the creditors could, upon the finding of any person a lunatic by inquisition, be tempted into a scramble or race for the first judgment, under the idea of obtaining preferences, and could thus obtain preference, the whole system devised by the legislature with so much care, would be frustrated, and the constitutional provision be rendered abortive: for the lunatic's estate would be liable to the creditors according to the course of the common law and its process."

This doctrine in Wright's Appeal was cited with approval by the Superior Court as late as 1938 in Moore's Case, 133 Pa. Superior Ct. 419, 421. We are of the opinion that under the authority of Wright's Appeal, supra, claimant, Rose Sassaman, did not, by virtue of her judgment entered on August 28, 1946, obtain such preference as is recognized by section 6 of the Act of June 1, 1915, supra.

Claimant, Rose Sassaman, however, contends that even though her judgment would not entitle her to such preference she is, nevertheless, entitled to a preference for the reason that her claim is founded upon an order for the support of a wife which, by law, should be given preference on the grounds of public policy. We are of the opinion that the able opinion of Judge Bok in the case of In re Riale, 53 D. & C. 361, is the answer to that contention.

While the facts of the case before us and the facts present in the case cited are not identical, the opinion

in the Riale case indicates that the wife of an incompetent there petitioned for payment of support for herself out of a certain fund in the hands of the guardian of her incompetent husband. The Commonwealth filed a claim for maintenance of the incompetent in the Norristown State Hospital, and the fund was insufficient to pay the Commonwealth's bill in full. Judge Bok concluded that the claim of the Commonwealth must prevail in accordance with the provisions of sections 1 and 6 of the Act of June 1, 1915, supra.

In the case before us, we adopt the language of Judge Bok as found at page 363 in the case cited, as follows:

"The Act of 1915, however, covers a separate field—the care by the State of its mentally incompetent citizens—and its provisions supply the answer to the wife's argument. In section 1, 71 PS §1781, it is provided that the 'property or estate of such person [the incompetent] *shall* be liable for' (italics supplied) his maintenance. In section 2, 71 PS §1784, it is provided that the proper court of common pleas '*shall* . . . make an order for the payment of maintenance to the Commonwealth', (italics supplied) upon the guardian or upon specified members of the incompetent's family, including the wife. Only such orders as are made upon the family members may be tempered by the court's discretion in the matter of their ability to pay. This is a clear legislative mandate that the State's services must be paid for by the patient or by his family to the extent that they can, and I have no doubt that the Commonwealth has the right to proceed against the wife for the deficiency here—although as a practical matter no court would make an order against her under the circumstances.

"The order of payment set forth in the act is much stronger than any implication of the wife's preference. Since the act mentions those claims 'which by law are now given preference', and since there is no specific preference given a wife by law, it must follow that the

legislature did not intend to give her one, for it could easily have said so. The liability of the incompetent's estate is flat, but the liability of the family is discretionary with the court. This is the reverse of giving the wife a prior claim against the incompetent's own estate. The act is rather in furtherance of the common law than in derogation of it. See South Philadelphia State Bank's Insolvency, 295 Pa. 433 (1929), and Booth & Finn, Ltd., v. Miller, 237 Pa. 297 (1929)."

We are of the opinion that the learned auditor was correct in concluding that the Commonwealth of Pennsylvania is entitled to precedence in the payment of its claim out of the funds now in the hands of the guardian of Julius Sassaman. Any balance thereafter remaining shall be applied on account of the payment of the claim of Rose Sassaman.

And now, to wit, October 14, 1947, the exceptions filed in behalf of claimant, Rose Sassaman, to the report of the auditor are dismissed.