## STATE ex BRICKER v GRIFFITH

Ohio Appeals, 2nd Dist, Franklin Co

No 3305.   Decided March 10, 1941

James N. Linton, Columbus, and Henry J. Linton, Columbus, for defendant-appellant, and for the application.

Thomas J. Herbert, Atty. Gen'l., Columbus; Janette A. Pierce, Columbus, and W. J. Berwanger, Asst. Atty. Gen'l, Columbus, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a money judgment in favor of the plaintiff and against the defendant.

The errors assigned are:

(1) The Court of Common Pleas erred in sustaining the demurrer to the answer of defendant to the amended petition.

(2) The Court erred in rendering a judgment against defendant on the pleadings.

(3) The judgment rendered by the lower court is contrary to law.

Upon the averments of the amended petition and the answer thereto there arises no conflict or dispute in facts. So that, the legal question presented in the trial court, and urged here, was and is properly raised by the demurrer to the answer of defendant to the amended petition.

The amended petition seeks to recover for the support of defendant's ward and inmate at the Lima State Hospital, from June 30, 1922, to July 10, 1925, 158 weeks at $3.50 per week, $553.00, and from July 10, 1925, to November 15, 1936, 592-2/7 weeks at $5.50 per week, $3257.57; in all, the sum of $3810.57.

The undisputed facts are that Fred E. Griffith on February 3, 1920, was indicted by a grand jury in Clinton Coun-

ty, Ohio, under case No. 3358, Court of Common Pleas, Clinton County, Ohio. The criminal offense charged does not appear and it is not material. Thereafter, on the 10th day of February, 1920, a jury in the aforesaid court returned a verdict finding that the defendant was insane and on the 11th day of February, 1920, a judge of said court ordered said Fred E. Griffith to be committed to the Lima State Hospital and, thereafter, Griffith was conveyed to said hospital and was an inmate therein under the aforesaid commitment during all of the period covered by the claims set forth in the amended petition.

The answer of the defendant, after setting up the above facts, denies any liability to the plaintiff for the reason that during the period covered by the claim of the plaintiff in the amended petition Griffith was a prisoner in said Lima State Hospital under the legal custody of the Common Pleas Court of Clinton, County, Ohio.

It is the claim of the plaintiff that Fred Griffith was a patient in a State Hospital for the insane, within the purview of §1815-1 GC, and is, therefore, amenable to the pay patient law as set up in §1815 GC et seq. The court sustained the demurrer to the answer and judgment was entered for the plaintiff in the amount prayed for in the amended petition.

The appeal challenges the correctness of this adjudication.

Our labors have been lightened by the assistance of counsel by comprehensive and complete briefs and we have been favored with two opinions of Judge Leach in the Common Pleas Court.

At the outset it will be helpful to examine and analyze the language of §1815-1 GC, effective when Griffith was committed, which provides:

"When any person is committed to a state hospital for the insane, to the Longview Hospital, to the Ohio Hospital for Epileptics, or to the Institution for Feeble-Minded, the judge making such commitment shall at the same time certify to the superintendent of such institution, and the superintendent shall thereupon enter upon his records the name and address of the guardian, if any appointed, and of the relative or relatives liable for such person's support under §1815-9."

It will be noted that Lima State Hospital is not mentioned by name in the section and if included it must be by the general term "a state hospital for the insane". This section was enacted March 30, 1911, 102 O. L. 63, after the erection of Lima State Hospital, which was subsequent to 1906 when the act creating the hospital was enacted.

There would seem to be no doubt that Griffith was **committed** to the Lima State Hospital; that it is a **hospital for the insane**, and that it is a state hospital. It is characterized in the law as a state hospital and the sole and only purpose of its creation was to provide hospitalization for the insane. Of course, it was instituted to take care of certain classes of insane, as set forth in §1985 GC, 98 Ohio Laws 236, ¶2,

"The Lima State Hospital shall be used for the custody, care and special treatment of insane persons of the following classes:

(1) Persons who become insane while in the state reformatory or penitentiary.

(2) Dangerous insane persons in other state hospitals.

(3) Persons accused of crime, but not indicted because of insanity.

(4) Persons indicted, but found to be insane.

(5) Persons acquitted because of insanity.

(6) Persons adjudged to be insane who were previously convicted of crime.

(7) Such other insane persons as may be directed by law."

It appears that Griffith would come under the 4th subheading of the section, namely, a person indicted, but found to be insane, and when committed to that hospital all of its uses would be brought into play, namely, custody,

care and special treatment of an insane person.

The word "custody" as employed in §1985 GC is stressed by the appellant as tending to support the claim that Griffith was a prisoner in Lima State Hospital. Although the word "custody" is not mentioned in defining the purposes of hospitals for the insane as carried in original §1947 GC, it is common knowledge that one of the most salient purposes of such institutions is custodial. Hospitals for the insane other than the Lima State Hospital carry on in every particular the uses and purposes for which Lima State Hospital was created, namely, the custody, care and special treatment of insane persons, the only distinction being that the inmates of Lima are, in the main, of certain classes of insane persons, although it may be noted that under (7) of §1985 GC, others than those mentioned in the first six sub-paragraphs might be committed there.

We are cited to several definitions of the word "custody", one of which is from Bouvier's Law Dictionary, (Rawle's Revision), "The detainer of a person by virtue of a lawful authority, * * *, custody has been held to be nothing less than actual imprisonment." In the broad concept of imprisonment it would indeed be difficult to distinguish the state of inmates of hospitals for the insane and inmates of certain other state hospitals and penal institutions. The test to be made here is not so broad but is whether or not Griffith, as an inmate of Lima State Hospital, under commitment from the Common Pleas Court of Clinton County was there under restraint of the law because of his indictment for the commission of a criminal offense or because of his insanity.

In our judgment he clearly was in Lima State Hospital by virtue of the determination of a duly constituted body, namely, the jury in Common Pleas Court, that he was an insane person. Having been so adjudged by virtue of §1985 GC, sub-paragraph 4, he was committed, as an insane person, to the Lima State Hospital. It is true that

another consequence attends because his insanity intervened to prevent duly constituted authority from requiring him to answer to the criminal charge against him and to assure that this be accomplished, the law provides that if and when he is restored to sanity, he shall be returned to the custody of the court where he was indicted. Sec. 7243 GC, as effective when Griffith was committed.

The fact that Griffith stands indicted for crime operates not at all to effect his commitment nor his incumbency in the hospital. It is only when and if he is restored to sanity that the indictment operates to cause his return to be tried thereon.

Our attention is directed to the arrangement of the Code, Title V, "State Institutions". Division I, General Provisions; Division II, "Benevolent Institutions" under which in Chapter 7 is found, "Hospitals for the Insane"; in Chapter 8, "Lima State Hospital". From this it is urged that there is a distinction in legislation between hospitals for the insane and Lima State Hospital and that, therefore, there is nothing inconsistent with the claim that one committed to Lima State Hospital who was under indictment may well be considered a prisoner in said hospital. Of course, if the legislation relating to commitment to Lima State Hospital was such that it required a determination that persons in the status of Griffith were virtually under sentence for the commission of an offense, there would be no difficulty in so holding. But it can not be successfully urged that Griffith is serving any sentence. No part of the period during which he is an inmate in Lima can be related to any sentence for crime nor to any retention of alleged commission of crime. His commitment to the Lima State Hospital effected his release as a prisoner awaiting trial. If Griffith's detention in Lima State Hospital was not supported by the verdict of his insanity he would have full right to be released therefrom because there is no authority whereby he may be held in Lima as a prisoner to await trial nor

held in Lima as a prisoner under sentence for conviction of crime.

"Division II" of Title V is headed, "Benevolent Institutions", under which is found both "Hospitals for the Insane" and "Lima State Hospital."

Sec. 1815 GC, provides that,

"All persons now inmates of, or hereafter admitted into, a benevolent institution, **except as otherwise provided in this chapter, and except as otherwise provided in chapters relating to particular institutions**, shall be maintained at the expense of the state." (Emphasis ours).

Both "Hospitals for the Insane" and "Lima State Hospital" are classified as "Benevolent Institutions" and unless it is otherwise provided as set out in §1815 GC, inmates of said institutions shall be maintained at the expense of the state. We have heretofore pointed out that it is "otherwise provided" that as to inmates of hospitals for the insane and Lima State Hospital their support shall be paid for by those who have the legal responsibility therefor. If an inmate of Lima State Hospital may be said to be in a penal institution then, too, the state would be responsible for his support, but we can find no hypothesis upon which this claim may be maintained, either upon the classification within Title V, General Code, or upon any view of the factual situation as appearing in any of the pertinent and germane sections of the Code.

Appellants direct attention to §1947 GC, as carried in substance from its enactment as R. S. 698, until its repeal in 1938, wherein it is provided that the institutions for the care and treatment of the insane in this state shall be respectively designated as follows: Cleveland State Hospital, Dayton State Hospital, Athens State Hospital, Toledo State Hospital, Massillon State Hospital, Longview State Hospital, and from this it is urged that it was not the legislative purpose to include Lima State Hospital as a state hospital for the insane within the purview of §1815-1 GC. This claim is countered by the appel-

lees and it is shown that at the time of the original enactment of §1947 GC, Lima State Hospital was not in existence and its institution not authorized, and further that the language of §1947 GC, could not be controlling as against the terms of §1815-1 GC, which latter section is found under Chapter 1 of Title V of the codification. If the language of §1947 GC, was applicable to exclude Lima State Hospital as a state hospital for the insane within contemplation of §1815-1 GC, it would control because §1947 GC was in effect long after the enactment of the legislation creating Lima State Hospital and after its erection and operation. Sec. 1947 GC can not, in our judgment, be controlling to exclude the classification of Lima State Hospital as a state hospital for the insane within the meaning of §1815-1 GC. It is now so included in §1819-15 GC, the section which supersedes §1947 GC, and its inclusion in this latter section is confirmatory only that it is properly classified.

We are cited to **State ex Diehlman v Clark, 102 Oh St 404**, wherein the court at page 409 said:

"Furthermore the commitment to the Lima State Hospital of the prisoner charged with murder in the first degree is legally only for a temporary custodianship, in the hope of a restoration to reason. While the Lima State Hospital is the actual custodian of the prisoner under the order of the Court of Common Pleas, the Court of Common Pleas is legally the continued custodian of the prisoner, and upon the prisoner's restoration to reason she must be restored to the Court of Common Pleas, not the Probate Court, for further proceedings upon the charge contained in the indictment."

From this language it is urged that the Common Pleas Court of Clinton County is legally the continuing custodian of Griffith and that he is a prisoner, as the court designated Diehlman in the foregoing quotation. There is considerable force in the claim of appellant because the opinion quoted from

is a per curiam carrying no syllabus. However, it must be considered in the light of the question presented to the court which was whether, or not the Common Pleas Judge presiding at the trial of the prisoner upon the inquest of insanity, had jurisdiction, upon the finding of the jury as to the then insanity of the prisoner, to commit him to the Lima State Hospital for the insane. Obviously, the quoted language is not necessary to nor controlling of the answer to the question before the court. In the purpose of the court to stress the jurisdiction of the Probate Court to commit Diehlman to Lima State Hospital upon the verdict of insanity of the jury as distinguished from the jurisdiction of the Probate Court, it may have employed language with implication broader than was intended.

The effect of the verdict of a jury in the situation presented in this case is identical with the effect of an inquest conducted by the Probate Court, wherein the insanity of a person is determined. In the Probate Court an inquest of insanity is initiated by an affidavit of some person mentioned in **§1890-23 GC.** The Probate Judge causes the person to be brought before him after due notice of the hearing. Upon hearing the Probate Judge may take testimony of witnesses and not to exceed two medical witnesses. He then makes determination whether or not the person on whom the inquest is being held is mentally ill or insane and, if so, orders him committed. The effect of the determination of the Probate Judge that the person is insane is identical with such determination by the jury in Griffith's case. Upon the verdict of insanity the Common Pleas Court may commit a person charged to be insane to the Lima State Hospital only. The Probate Court may commit him to such hospital or may commit him to some other state hospital. After the insane person has been committed to a hospital for the insane by the Probate Judge, the custody of that person is in the Superintendent of the hospital to which he was committed and his release from that institution

depends entirely upon a determination of the Superintendent, with the written consent of the Director of Public Welfare, with which the Probate Judge has nothing to do. Now the subject of statute, §1890-49 GC. **State ex rel v Lamneck, 133 Oh St 257.**

The same situation attends respecting the commitment and release of Griffith. The only difference is that in Griffith's case, if he is restored to sanity, the law requires that instead of permitting him to go free entirely, he is released from Lima State Hospital but is at that time placed into the custody of the Court of Common Pleas, wherein an indictment is and has been pending against him. If not restored to sanity his commitment operates in all particulars as if he had been committed by a Probate Judge.

Counsel for the respective parties have been in correspondence with the court respecting procedure that has been followed in making collections for support from persons who have been committed to Lima State Hospital by commitment of the Common Pleas Judge after verdict of insanity. In the few cases brought to our attention it has been an administrative practice to collect for such support from the estate of the person committed or from those responsible for his support. However, the practice has not been shown to be so general as to permit of its consideration as bearing upon the construction of §1815-1 GC.

We are of opinion that the trial judge was correct in entering judgment for the plaintiff for the reasons set out in his two written opinions and for the additional reasons herein set forth.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.

### APPLICATION FOR REHEARING

No 3305. Decided March 25, 1941

BY THE COURT:
Submitted on application of appellant for rehearing upon six reasons as-

signed. All of the grounds of the application are based upon the claim which was urged by appellant on the appeal and to which our decision was directed. We undertook to discuss the law of this case at considerable length, and are of opinion that all of the grounds of the application for rehearing were directly or inferentially considered in our former opinion. It is our judgment that under the law and upon the facts appearing in the record under consideration Fred Griffith was a patient in Lima State Hospital, duly committed to that institution because of his insanity, and that he at no time has been a prisoner in said state hospital.

The application for rehearing will be denied.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.