IN RE JOHN J. TEW, JR.

No. 59

(Filed 15 March 1972)

1. **Criminal Law §§ 5, 124— acquittal by reason of insanity**
   A verdict of not guilty due to insanity constitutes a full acquittal, and one thus acquitted is entitled to all the protection and constitutional rights as if acquitted upon any other ground.

2. **Criminal Law § 5; Insane Persons § 1— acquittal by reason of insanity — inquisition**
   A person acquitted of crime because of insanity will be held for and inquisition and, if it is determined that he is insane, he will be committed to a State Hospital. G.S. 122-84.

3. **Insane Persons § 1— acquittal by reason of insanity — commitment to hospital — purpose**
   The commitment of a person acquitted of crime because of insanity is imposed for protection of society and the individual confined —not as punishment for crime.

In re Tew

4. **Insane Person § 11— acquittal by reason of insanity — right to discharge**

A person acquitted of crime because of insanity can be confined in an asylum only until his mental health is restored, at which time he will be entitled to his release like any other insane person.

5. **Insane Persons § 11— acquittal by reason of insanity — discharge from hospital — certificates of State hospital superintendents — unconstitutionality of statute**

Portion of G.S. 122-86 providing that no judge shall discharge upon habeas corpus a person acquitted of crime because of insanity until the superintendents of the several State hospitals have certified to his sanity and safety violates due process and infringes upon the Court's prerogative and duty to issue the writ of *habeas corpus*. N. C. Constitution, Art. I, § 21.

6. **Insane Pernsons § 11; Habeas Corpus § 2— acquittal by reason of insanity — discharge from hospital — habeas corpus — burden of proof**

A person acquitted of crime by reason of insanity who seeks to be discharged from a mental hospital on the ground of restoration to sanity must resort to habeas corpus proceedings; such person has the burden of proving not only that he has recovered his sanity, but that his release would not endanger himself or others.

APPEAL by petitioner pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals affirming the order of *Hall, J.,* 3 November 1970 Session of WAKE, reported in 11 N.C. App. 64, 180 S.E. 2d 434. This appeal was docketed and argued in the Supreme Court as No. 36 at the Fall Term 1971.

Habeas corpus proceeding instituted by John J. Tew, Jr., an inmate of Dorothea Dix Hospital, one of the State's hospitals for persons acquitted of crime on account of mental illness.

On 17 July 1965 Tew shot and killed his wife, Inez Suggs Tew. In consequence he was indicted for first-degree murder and tried at the 30 August 1965 Session of the Superior Court of Harnett County, at which Judge Leo Carr presided. The State offered plenary evidence that Tew was guilty of the capital crime with which he was charged. His defense was that he was insane at the time his wife was killed. The jury's verdict, returned 4 September 1965, was that "the defendant is not guilty by reason of insanity."

In accordance with G.S. 122-84 (1964), Judge Carr ordered Tew held pending an inquisition as to his mental condition, which was duly held on 17 September 1965. After a plenary hearing Judge Carr found that Tew's mental condition "is such as to render him dangerous to himself and more especially to

other persons, and that his confinement for care, treatment and security demands that he be committed to the Dorothea Dix Hospital in Raleigh, North Carolina." He ordered Tew committed to the hospital "for treatment and care" pursuant to the provisions of G.S. 122-83 (1964), G.S. 122-84 (1964), and G.S. 122-86 (1964).

Since 17 September 1965 Tew has been continuously within the confines of Dorothea Dix Hospital. So far as the record discloses, he first attempted to obtain his release in May 1969 in habeas corpus proceedings before Judge Hamilton Hobgood. After a plenary hearing, Judge Hobgood ordered that Tew's confinement in the hospital continue.

On 7 October 1970 Tew began this proceeding by applying to Judge C. W. Hall for a writ of habeas corpus. In his petition he alleged, *inter alia*, that "he is not now insane" and his continued restraint in Dorothea Dix Hospital is illegal; that at the previous hearing before Judge Hobgood, Dr. R. L. Rollins, superintendent of Dorothea Dix Hospital, and Dr. Andrew L. Laczko, director of the hospital's forensic unit, gave testimony which "was without foundations in fact" and in conflict with "the facts known and expressed previously" by them; that "certain pressures were brought upon Dr. Laczko by high officials of Dorothea Dix Hospital which caused him to testify differently from what he believed" and from what he had "solemnly indicated" to Tew's attorneys he would say. He prayed that a writ of habeas corpus be directed to Dr. R. L. Rollins and to Dr. Andrew L. Laczko, requiring them to bring him before Judge Hall in order that the legality of his restraint might be determined.

Judge Hall issued the writ and heard the matter on 3 November 1970. In his judgment, filed 5 November 1970, Judge Hall made findings of fact which, except when quoted, are summarized below (enumeration ours):

(1) Since February 1969 Tew has worked in the hospital supply room in the presence of both men and women and has shown no disposition to harm himself or anyone else.

(2) His "mental condition has considerably improved since his commitment," and drug treatment has been discontinued for over two years. "Recent psychiatric examinations by qualified experts reveal no evidence of any mental disorder."

(3) "Petitioner has now been restored to his right mind, is now sane, and his mental condition is not now such as to render him dangerous to himself or other persons."

(4) "Petitioner has had symptoms of paranoia, which are now in remission; and the Superintendent of Dorothea Dix Hospital does not recommend his unconditional release."

(5) "The superintendents of the several State hospitals have not certified that they have examined the petitioner and found him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public."

Upon the foregoing findings, Judge Hall "concluded" that Tew "is now sane and his detention is no longer necessary for his own safety or the safety of the public." Although he noted "doubts as to the validity of the proviso of G.S. 122-86," he held that he was "not authorized to discharge the petitioner until after the superintendents of the several State hospitals have certified that they have examined him and found him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public." He thereupon remanded Tew to the custody of the Dorothea Dix Hospital.

Tew excepted to Judge Hall's conclusion that he was not authorized to discharge him and to the order remanding him to Dorothea Dix Hospital. His application to the Court of Appeals for a writ of certiorari was allowed and, in an opinion by Judge Campbell in which Judge Graham concurred, the Court of Appeals affirmed Judge Hall's judgment. Judge Britt dissented, and Tew appealed under G.S. 7A-30(2).

*Robert Morgan, Attorney General, and G. Eugene Boyce, Special Counsel, for the State.*

*Yarborough, Blanchard, Tucker & Denson by Charles F. Blanchard and Irvin B. Tucker, Jr., for petitioner appellant.*

SHARP, Justice.

The one question presented by this appeal is the validity of the last sentence of G.S. 122-86, italicized below. In whole, the section provides:

"PERSONS ACQUITTED OF CRIME ON ACCOUNT OF MENTAL ILLNESS; HOW DISCHARGED FROM HOSPITAL.—No person acquit-

ted of a capital felony on the ground of mental illness, and committed to the hospital designated in § 122-83 shall be discharged therefrom unless an act authorizing his discharge be passed by the General Assembly. No person acquitted of a crime of a less degree than a capital felony and committed to the hospital designated in § 122-83 shall be discharged therefrom except upon an order from the Governor. No person convicted of a crime, and upon whom judgment was suspended by the judge on account of mental illness, shall be discharged from said hospital except upon the order of the judge of the district or of the judge holding the courts of the district in which he was tried: Provided, that nothing in this section shall be construed to prevent such person so confined in the hospitals designated in § 122-83 from applying to any judge having jurisdiction for a writ of habeas corpus. *No judge issuing a writ of habeas corpus upon the application of such person shall order his discharge until the superintendents of the several State hospitals shall certify that they have examined such person and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public.*" (Italics ours.)

The precursor of G.S. 122-86 was N. C. Public Laws ch. 1, § 67 (1899). In pertinent part it provided: "No person acquitted of a capital felony, on the ground of insanity, and committed to the hospital for the dangerous insane, shall be discharged therefrom unless an act authorizing his discharge be passed by the general assembly. . . . "

In 1904, in *In re Boyette*, 136 N.C. 415, 48 S.E. 789, this Court declared the foregoing section invalid as a legislative attempt to infringe upon the Court's constitutional prerogative and duty to issue the writ of habeas corpus upon proper application. The Court said: A person restrained of his liberty cannot be required to "await the action of the Legislature before he can have the cause thereof inquired into." Under the constitutional guaranty that the privilege of the writ of habeas corpus shall not be suspended, "every person restrained of his liberty is entitled to have the cause of such restraint inquired into by a judicial officer. The judicial department of the government cannot by any legislation be deprived of this power or relieved of this duty. It must afford to every citizen a prompt, complete and adequate remedy by due process for every unlawful injury to his person or property. This is absolutely essential

In re Tew

to a constitutional government." *Id.* at 423, 48 S.E. at 792. We reaffirm the decision in *In re Boyette, supra.*

Inexplicably, after the decision in *Boyette,* the legislature of 1905 attempted to cure the constitutional infirmities of Section 67 by re-enacting the invalidated section *ipsissimis verbis* with the addition of the following provisions: "Provided, that nothing in this section shall be construed to prevent such person so confined in the hospitals for the dangerous insane from applying to any judge having jurisdiction for a writ of habeas corpus. No judge, issuing a writ of habeas corpus upon the application of such person, shall order his discharge, until the superintendents of the several state hospitals shall certify that they have examined such person and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public." Rev. § 4620 (1905).

Needless to say, the re-enactment of invalidated Section 67 did not validate it. The quoted additions, with insignificant alterations in subsequent years, are codified in the last two sentences of G.S. 122-86. The final sentence clearly purports to prohibit a judge from ordering the discharge of any such person from Dorothea Dix Hospital or Cherry Hospital (the hospitals designated in G.S. 122-83) "until the superintendents of the several State hospitals shall certify that they have examined him and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public." Because of the conclusion we reach, we need not decide whether the statute designates the superintendents of Dorothea Dix Hospital and Cherry Hospital or the superintendents of *all* the State's mental hospitals.

Tew contends that the certification requirement of G.S. 122-86 is unconstitutional, and Judge Hall's findings that he is now sane and safe requires his unconditional release. He asserts: (1) to make such certification an indispensable requisite for his release, without providing any recourse in the event a superintendent should arbitrarily or erroneously refuse certification, deprives him of due process of law, N. C. Const. art. I, § 19 (1970), and (2) to prohibit a judge from releasing him on a writ of habeas corpus under any circumstances until the superintendents have issued the required certificates suspends the privilege of the writ of habeas corpus as to him and infringes upon the court's prerogative and duty to issue the writ, N. C.

Const. art. I, § 21 (1970). These contentions require serious consideration.

[1-4] A verdict of not guilty due to insanity constitutes a full acquittal, and one thus acquitted "is entitled to all the protection and constitutional rights as if acquitted upon any other ground." *In re Boyette, supra* at 419, 48 S.E. at 791. See 68 Yale L. J. 293 (1958). However, such a person will be held for an inquisition and, if it is determined that he is then insane, he will be committed to a State hospital. G.S. 122-84. The commitment of such a person following an acquittal is imposed for the protection of society and the individual confined—not as punishment for crime. *Salinger v. Superintendent,* 206 Md. 623, 112 A. 2d 907 (1955); *In re Clark,* 86 Kan. 539, 121 P. 492 (1912). He can be confined in an asylum *only* " 'until his mental health is restored when he will be entitled to his release, like any other insane person.' " *In re Boyette, supra* at 419, 48 S.E. at 791. See generally, 38 Tex. L. Rev. 849 (1960); 112 U. Pa. L. Rev. 733 (1963-64); 1961 Duke L. J. 481.

In G.S. 122-86 the legislature clearly manifested its dual purpose to protect the public from the premature release of "a criminally insane" person and to protect such an individual from himself. The certification requirement also discloses the legislature's conviction that judges are not qualified to make medical findings, and that the institutional psychiatrists are better equipped to determine whether such a person has recovered his sanity and is no longer dangerous. The requirement of examination and certification from each of the *several* superintendents divides the responsibility in the event insanity recurs in a petitioner certified to be sane and safe. Presumably multiple certification diminishes the danger that a superintendent, fearful of public censure in the event of a recurrence, will keep a patient confined longer than is reasonably necessary.

The question before us, however, is not whether the purpose and premise upon which the legislature based the statute are sound, but whether it can constitutionally make the court's power to release petitioner upon habeas corpus depend *solely* upon certification by the several superintendents that he is now sane and safe. The answer is NO. The power of the court, in a proper case, to discharge a person acquitted of crime because of insanity, cannot be thus circumscribed. Such a condition would deprive the court of any exercise of judicial discretion and

nullify its power to release an inmate being illegally detained in a mental hospital. *In re Boyette, supra.* The legislature, in one sentence of its 1905 enactment, recognized the right of a person confined in a mental hospital to apply to a judge for a writ of habeas corpus and, in the next, imposed a condition which would effectively defeat the purpose of the writ.

[5] Psychiatry is not an exact science, and hospital doctors are not infallible. Yet G.S. 122-86 would not permit a petitioner to establish his restoration to sanity by the testimony of other qualified psychiatrists. It provides no remedy or procedure whatever to determine a charge (such as the one made here) that a superintendent arbitrarily withheld a certificate, acted in bad faith, or was honestly mistaken in judgment. It merely decrees, with complete finality, that no judge shall discharge a person acquitted of crime because of insanity until the superintendents of the several State hospitals have certified to his sanity and safety. It does not, therefore, meet the requirements of due process. We hold that the absolute certification requirement of G.S. 122-86 is unconstitutional. See *Rogers v. State,* 459 S.W. 2d 713, 716-17 (Tex. Civ. App. 1970).

G.S. 122-86 has not been materially changed since 1905 and the changes then made created a mishmash. The section is now "a thing of shreds and patches," and its presence in the General Statutes is deceptive and confusing. The first sentence was declared unconstitutional in 1904 for reasons which are equally applicable to the second. The third sentence is a part of G.S. 122-84, and the fourth is a constitutional guaranty. This decision invalidates the fifth and last sentence.

[6] When the legislature has prescribed adequate procedures whereby one acquitted of crime because of mental illness may have determined the issue of his restoration to sanity, the general rule is that one who seeks to be discharged from a mental hospital on that ground must show that he has exhausted the statutory remedy before resorting to habeas corpus. Annot., 73 A.L.R. 567 (1931); annot., 95 A.L.R. 2d 54 (1964); 39 Am. Jur. 2d *Habeas Corpus* § 87 (1968); 21 Am. Jur. 2d *Criminal Law* § 61 (1965); 44 C.J.S. *Insane Persons* § 131b (1945). In this State, there is no such statutory procedure. G.S. 122-84 specifies the procedure whereby the authorities having the custody of persons acquitted of crime on the grounds of insanity may initiate proceedings for his release. One who seeks his own

release must resort to habeas corpus proceedings. See 41 Am. Jur. 2d *Incompetent Persons* § 46 (1968). In that proceeding he has the burden of proving not only that he has recovered his sanity, but that his release would not endanger himself or others. *Ragsdale v. Overholser*, 281 F. 2d 943 (D.C. Cir. 1960). See 21 Am. Jur. 2d *Criminal Law* § 58 (1965) ; 39 C.J.S. *Habeas Corpus* § 48 (1944).

In *Ragsdale*, Burger, Circuit Judge, now Chief Justice of the United States, noted that one who has been committed to a mental institution in consequence of having obtained a verdict of not guilty by reason of insanity belongs to an exceptional class of people. He not only has the burden of proof when he seeks his release, said Judge Burger, but "[i]n a 'close' case even where the preponderance of the evidence favors the petitioner, the doubt, if reasonable doubt exists about danger to the public or the patient, cannot be resolved so as to risk danger to the public or the individual. A patient may have improved materially and appear to be a good prospect for restoration as a useful member of society; but if an 'abnormal mental condition' renders him potentially dangerous, reasonable medical doubts or reasonable judicial doubts are to be resolved in favor of the public and in favor of the subject's safety." *Id.* at 947.

The manner in which this case comes to us presents practical problems. Since Judge Hall remanded petitioner to the custody of Dorothea Dix Hospital without declaring the certification requirement of G.S. 122-86 unconstitutional the State did not except to the findings of fact or appeal. Satisfied with Judge Hall's findings, petitioner did not bring up the evidence which Judge Hall heard and upon which presumably he based his findings. As previously noted, petitioner's sole assignment of error is that the judge erred in failing to declare the statute unconstitutional and to release him upon the facts found.

Petitioner's position is not without its logic. However, we concluded that the present posture of the case does not justify our remanding it with directions that a judgment be entered ordering Tew's immediate release. In the first place, we do not know what Tew's mental condition is today. More than sixteen months have elapsed since Judge Hall made his findings. Although he found that Tew was then sane he also found that he had shown "symptoms of paranoia which are now in remission;

In re Tew

and the Superintendent of Dorothea Dix Hospital does not recommend his unconditional release."

"The term 'remission' at best means a temporary recovery, perhaps a temporary, partial recovery." *In re Rosenfield,* 157 F. Supp. 18, 22 (1957). Since Tew was acquitted of first-degree murder by reason of insanity the public interest requires that we make no assumptions about his present mental condition. Furthermore, at the time Judge Hall made his findings he was under a misapprehension as to the applicable law. Even though he expressed doubt about the constitutionality of the certification requirement of G.S. 122-84, he held he was without authority to release him until the certificates were obtained. Under this view, any findings with reference to Tew's mental condition were superfluous and without consequences. It does not appear that, but for the statute, he would have ordered Tew's *unconditional* release in the face of Dr. Rollins' refusal to recommend it. This refusal, which Judge Hall incorporated in his findings, bolsters our conclusion that the judgment should be vacated and this proceeding remanded for a hearing de novo. It is so ordered.

At the hearing the burden of proof will be upon petitioner. The judge will consider all the evidence offered by both petitioner and the State and make his findings therefrom. According to the facts found, Tew may be granted his unconditional release or he may be remanded to the custody of Dorothea Dix Hospital. Further, we perceive no legal reason why he could not be granted a conditional probationary release if his mental condition be found to justify it. See G.S. 122-67 (1964). We note that Tew is not now a person charged with crime or one upon whom judgment has been suspended; nor is he one awaiting sentence.

The decision of the Court of Appeals is

*Reversed.*