No. 22925.

STATE OF COLORADO, COLORADO STATE HOSPITAL, CHARLES
E. MEREDITH, SUPERINTENDENT *v.* ESTATE OF
ARLESTER L. BURNELL, WARD.
(439 P.2d 38)

Decided March 4, 1968. Rehearing denied April 1, 1968.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, RICHARD D. ROBB, Assistant, for plaintiffs in error.

FREDERICK M. KAL, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

ARLESTER L. BURNELL, to whom we will refer as Burnell, was charged by information in the district court with the crime of murder. Upon his plea of not guilty by reason of insanity, Burnell was granted a separate jury trial on the issue of his sanity. The jury returned a verdict finding Burnell "legally insane at the time of the commission of the alleged crime and is now legally insane." Pursuant to the judgment entered on the jury verdict, Burnell was committed to the Colorado State Hospital.

In subsequent proceedings in the probate court of the City and County of Denver, Burnell was civilly adjudicated a mental incompetent. An estate was opened in which Burnell's daughter was appointed conservatrix to enable her to collect Burnell's veteran's pension. Considerable money had accumulated in the estate when in April 1966, the Colorado State Hospital filed claim for the costs of care and maintenance of Burnell which had accrued since his admission to the hospital on April 8, 1963. Authority for reimbursement of these costs from the Burnell estate is provided for in C.R.S. 1963, 71-1-16, as amended in 1965 Perm. Supp. C.R.S. 71-7-1, et seq.

The probate court denied the claim, holding that the particular statute is unconstitutional as applied to one adjudicated criminally insane. The court's judgment of dismissal is challenged in this writ of error.

■■ The applicable statute clearly imposes liability on the *estate* of a criminally insane person who is committed or transferred to a public institution operated by the State of Colorado for care and maintenance. The statute also imposes similar liability for costs of care, treatment and maintenance of the mentally ill or mentally deficient persons who are civilly committed to such institutions.

In holding the statute unconstitutional as applying to a criminally insane person, the probate court held

it violative of the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. The court took the position that there was an insufficient distinction between that class of persons found guilty of crime and sent to the state penitentiary and those in the class found not guilty of crime by reason of insanity and sent to the Colorado State Hospital so as to constitutionally charge the latter for their care and maintenance while not charging the former. The court found unequal protection on the assumption that those found guilty of crime and those found not guilty by reason of insanity are of the same class and that they are accorded different and unequal treatment under the law.

Assuming that such persons are of the same and not of a distinctive class, it is to be noted that C.R.S. 1963, 105-4-17, provides:

"Every able-bodied convict shall be put to, and kept at, the work most suitable to his capacity, and most advantageous to the people of the state of Colorado, and which may least conflict with the free labor of the said state, during his confinement. The earnings of such convict, *after deducting sufficient amount thereof to pay and satisfy the cost of maintenance and retention,* shall be given to the family of such convict, or dependents, if there be any, and if there be none, the same accumulated shall be paid to such convict upon discharge from the penitentiary." (Emphasis added.)

Similar provisions also exist concerning the care and maintenance of delinquents in other institutions under the Department of Institutions. See, *e.g.,* C.R.S. 1963, 105-7-7, relating to the earnings of male prisoners in county jails.

Thus it may be seen from the statutes that the costs of maintaining and caring for those in the various institutions of the state of Colorado, be they penal or medical, are recoverable. Only the manner of recovering the costs differ. In *Landwehr v. Regents of the Univer-*

*sity of Colorado,* 156 Colo. 1, 396 P.2d 451, we quoted with approval the following language from *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P.2d 1098: "* * * to constitute class legislation within the constitutional prohibition, the classification must be unreasonable. The question of classification is primarily for the legislature. Courts will not interfere with the legislative classification unless it appears that there is 'no fair reason for the law that would not equally require its extension to the accepted class.' * * *"

 In making the distinction between the method of recovering the costs of confining and maintaining convicted criminals and of caring for and treating the criminally insane, we hold that such difference is not unreasonable. The legislature has given recognition to the fact that the criminally insane persons are ill and that many usually cannot be put to profitable work. It would therefore be impractical to attempt to recover the costs of their care by requiring them to earn it, although there are undoubtedly some instances in which they do earn their care and maintenance. Also hospital care and treatment is generally more involved, more expensive and oftentimes of considerably longer duration than commitment in other institutions. We can see no constitutional inequality in requiring those receiving more expensive care to be liable for additional costs through assets which they may have accumulated.

 Additionally, we believe the probate court erred in classifying the criminally insane with those found guilty of crimes and incarcerated in the state penitentiary. This classification cannot be found in any legislative enactment. The legislative classification grouped the criminally insane with all other persons who are adjudicated mentally ill or mentally deficient. With such a classification the statute then provides that regardless of how the person has been committed, all persons being treated in the same institution are charged for the costs thereof with recovery from the

estate, if any, being the same in all instances. We see nothing unreasonable or unequal in this classification.

The judgment of the probate court is reversed and the cause remanded with instructions to allow the claims of the Colorado State Hospital and to enter judgment therefor in the estate in the amount per stipulation of the parties already of record in the trial court.