**Redding Estate**

*Edward B. Bulleit,* for guardian.

*Robert W. Geigley,* for Wilbur V. Redding, the incompetent.

*Donald M. Swope,* for Estella Redding.

*H. Thomas Pyle,* for Adams County.

*Oscar F. Spicer,* for Commonwealth of Pennsylvania.

*John W. Phillips,* guardian ad litem, for Wilbur V. Redding, p.p.

MacPHAIL, P. J., July 7, 1972.—Wilbur V. Redding was committed to the Harrisburg State Hospital on November 7, 1969, in lieu of sentence under the provisions of section 410 of the Mental Health Act of October 20, 1966, Sp. Sess., P. L. 96, 50 PS §4410. That commitment order will expire October 21, 1972. No appeal has been taken from that order.

On April 17, 1970, a petition was filed by Mr. Redding's wife under the provisions of the Incompetents' Estates Act of 1955, Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3101, et seq., to have Mr. Redding adjudicated an incompetent. After two hearings, one of which Mr. Redding attended, the court on July 16, 1970, adjudicated him to be an incompetent person and appointed petitioner herein as guardian of his estate.

The principal assets in the ward's estate consisted of a small amount of personal property and three tracts of real estate, all jointly owned between the ward and his wife as tenants by the entireties. The real estate was encumbered by various liens. The ward receives a Social Security benefit of $136 per month which is insufficient to pay his expenses as a patient at the Harrisburg State Hospital. After petition and

hearing, the guardian was authorized to sell the jointly held real estate with the joinder of the wife. Two of those tracts were sold at private sale. A return of sale was filed in each case indicating the purchase price and requesting the court's authorization to pay the expenses of sale and liens against the real estate. Notice of the filing of the return was given to all parties in interest, including the incompetent, and appropriate orders entered. Since all of the proceeds from the first sale were necessary to pay the expenses of sale and liens against the real estate, there was no balance to be distributed from the proceeds of sale. As the result of the second sale, however, there was a balance for distribution and the court ordered that the remaining balance be divided into two equal shares, one-half thereof to be paid by the guardian to the ward's wife and the other one-half to the ward's estate. No exception or appeal was taken from that order. Notwithstanding that order, the guardian, out of caution, continued to retain Mrs. Redding's share, except for a small payment on account of personal taxes, in an escrow account pending a disposition of the petition now before us.

That petition has been filed by the guardian under section 644 of the Incompetents' Estates Act, supra, requesting authorization to pay certain "accounts" and to pay the future maintenance costs of the incompetent at the Harrisburg State Hospital.

Counsel for the incompetent has objected to the payment of the accounts and the ward's future maintenance from his separate estate, contending that such payment should be made from the proceeds of the jointly held property. Exception has also been taken to the position of the guardian that the net proceeds should be equally divided between the ward and his wife.

There are some procedural problems with which we must deal in this matter. The question of the division of the proceeds of the sales of the real estate is technically not before us; yet it is obvious that the petition to pay accounts, etc., is moot unless it is determined that these amounts may be paid from the proceeds of the sales and particularly from the ward's interest therein, because there are no other funds for the payment of those accounts. With one exception, the wife of the ward will not agree that any of the accounts be paid from the net proceeds of the sales. If an exception had not been filed by the ward in this proceeding raising this question, we do not believe we would have any authority to adjudicate the issue. But since it has been raised by the ward, we now feel free to make that adjudication.

Fortunately, the Supreme Court of Pennsylvania has previously dealt with this issue and, therefore, we need only apply the holding in Interboro Bank and Trust Company Appeal, 359 Pa. 315 (1948), to the facts at hand. It was specifically held in that case, at page 318, that "The court, possessed of all powers which the incompetent could have exercised, may likewise direct that the entireties estate be terminated and the guardian hold one-half the net proceeds for her." The reasoning for that holding is well expressed in the final paragraph of that opinion and need not be repeated here. Accordingly, we will enter as part of our decree in the within matter a confirmation of our previous order directing the guardian to divide the net proceeds from the sales of the jointly held real estate into two equal shares, one to be retained by the guardian for the ward, and the other to be paid to Mrs. Redding.

Now we must examine the petition now before us in the light of the provisions of section 644 of the In-

competents' Estates Act. In pertinent part, section 644 recites that: "The Court, for cause shown, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incompetent for the *care, maintenance or education* of the incompetent, his spouse, children or those for whom he was making such provision before his incompetency, or for the reasonable funeral expenses of the incompetent's spouse, child, or indigent parent." (Italics supplied.)

Included in the request for payment now before us are commissions for the guardian and counsel fees for its counsel. We do not believe that these administrative costs are within the scope of section 644 and, therefore, they must await the filing of an account. The same is true with respect to an account allegedly due on the purchase of a boat by the incompetent prior to the adjudication of incompetency. Accordingly, we will hold that those items must await the filing of an account. At that time, the ward's objections may be filed and an appropriate disposition will be made thereof.

Petitioner requests authority to pay an invoice from the Commonwealth of Pennsylvania pertaining to the hospitalization of the incompetent from January 24, 1959, to February 7, 1969. The ward objects to this account, claiming that the statute of limitations as to at least part of that account has run. Originally, of course, this account was a claim for maintenance of the incompetent. However, its present status is one of a debt owed by the ward. The claim does not arise out of the ward's present hospitalization and, therefore, is not a claim for maintenance. Accordingly, we will hold that the account cannot be paid in this proceeding. See Wright's Appeal, 8 Pa. 57 (1846).

In its petition, the guardian also requests leave to

reimburse Mrs. Redding for one-half of the amount paid by the guardian from the proceeds of the sales of the real estate to discharge a lien entered by the Commonwealth for the care of the ward's child who is also confined in a mental hospital. The discharge of this lien was necessary to transfer title to the jointly held real estate and its payment was authorized by the court on the petition filed to sell the real estate. As previously noted, the guardian may, pursuant to court approval, pay for the maintenance and care of his children as well as himself. If this claim was for the current maintenance of that child, we might consider it as a proper disbursement under this petition. However, like the claim for the ward's own maintenance from 1959 to 1969, this claim is one for past maintenance. It was a claim reduced to judgment. While Mrs. Redding may very well be entitled to reimbursement, she must await an adjudication of her claim either at an accounting or in a petition to settle a disputed claim under section 416 of the Incompetents' Estates Act for the very reason, of course, that the ward does dispute the payment of that claim.

Next, petitioner requests authorization to pay a claim from the County of Adams. The county has paid for the ward's costs of maintenance at the Harrisburg State Hospital since he was committed there on November 7, 1969. Under section 505 of the Mental Health Act, the county is liable in the first instance for these charges. Section 501 of the same act authorizes the county to recover such sums from the disabled person. The ward not only contests the validity of the county's claim for reimbursement (see infra), but argues that the claim should be paid from the net proceeds of the sales of real estate. In this instance, as in the prior instances, we must again look at a strict construction of the authority we have under section 644.

Mr. Redding's maintenance is being paid by the county of Adams. Therefore, there is no necessity for the guardian to request a payment on that account. The county's claim is not one for maintenance but rather for reimbursement. For those reasons we are of the opinion that this claim must also await an accounting or, since the ward has contested the claim, the filing of a petition under section 416 by the guardian.

It has been agreed by the wife of the ward that the claim of Lake Heritage Property Owners' Association be paid from the proceeds of the sales of real estate. Therefore, the guardian may make that disbursement without our order. The request for the payment of the clerk of the court's costs in this proceeding is again an item more properly to be claimed in an accounting.

Finally, petitioner requests authority to pay the ward's current costs of maintenance at the State Hospital. The ward contests this item, as well as the item for accumulated costs of maintenance paid by the county, on the ground that he is in the hospital involuntarily and that if he were in jail or the penitentiary he would not have to pay any costs of maintenance. Again, since we have applied a narrow construction to section 644 since the law specifically directs that the county pay the maintenance and only provides for reimbursement to the county, and especially in view of the ward's objection, we will hold that the proper way to treat this expenditure would be by reimbursement rather than payments on a current basis. Accordingly, this item must also await an accounting or an adjudication under section 416 of the Incompetents' Estates Act.

In reaching our decision in this matter, we are mindful of our duty to conserve the ward's estate, especially where his discharge from the mental hospital may be imminent. See Wright's Appeal, supra. Before

the payment of these accounts is authorized, the ward must be given an opportunity to present any evidence which he has to dispute the claims and also an opportunity to examine and dispute those claims as they are presented. As we have said, the proper procedure for doing this is either by an accounting or a petition under section 416.

## DECREE OF COURT

And now, July 7, 1972, for the reasons set forth in the foregoing opinion, the petition for payment of accounts under section 644 of the Incompetents' Estates Act is denied without prejudice to the guardian to file a petition under section 416 of that act and/or to claim the payment of such accounts in a formal accounting.

It is further decreed that the confirmation of the private sale of real estate entered by this court on March 17, 1972, directing the guardian to pay the remaining balance of the proceeds of the sale of jointly held real estate in equal shares to Estella R. Redding and the guardian of the Estate of Wilbur V. Redding for future accounting be and the same is hereby affirmed.

MacPHAIL, P. J., November 14, 1972.—There is pending before us a petition by the guardian of an incompetent's estate to compromise controversies under section 416 of the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3416.[1]

---

[1] The petition was filed on July 21, 1972. The provisions of the Incompetents' Estates Act were repealed by the new Probate, Estates and Fiduciaries Code, Act No. 164 (1972), effective July 1, 1972. Under section 5521 of the Probate, Estates and Fiduciaries Code, section 3323 of that code is made applicable to the compromise of controversies in proceedings in incompetents' estates.

After notice to all parties in interest a hearing was held. Memoranda of law have also been handed up by several of the parties.

The petition sets forth four claims filed with the guardian for which there are funds available for the payment thereof, but to the payment of which the ward objects. In a prior order[2] we suggested that the guardian could claim payment of these accounts in an accounting or under section 416. While it is now quite apparent that an accounting would have been a far better procedure to dispose of these claims, we are of the opinion that since the payment of each claim is disputed by the ward, and since the guardian has proposed to settle this controversy by payment of these claims from the ward's property, we have at least "color of authority" to proceed, especially since the incompetent is represented on the record by retained counsel.

## 1. CLAIM OF THE COMMONWEALTH

The ward had been hospitalized at the Harrisburg State Hospital on occasions previous to his section 410 commitment on November 7, 1969. The guardian has received a "detailed and certified statement" from the Commonwealth for hospital care and maintenance for the ward for periods of time in 1959, 1962, 1963 and 1969. The Commonwealth statement is signed by a Commonwealth revenue agent and sets forth the dates of confinement and the charges assessed by the

Since the provisions of section 3323 are substantially the same as those of section 416 of the Incompetents' Estates Act, we will treat the present petition as a proceeding under section 3323 of the Probate, Estates and Fiduciaries Code.

[2] In a previous opinion entered July 7, 1972, we disallowed the payment of these claims on a petition filed by the guardian under section 644 of the Incompetents' Estates Act.

State. The amount of the claim is $1,276.10. The ward's attorney objected to the statement of claim as being incomplete in underlying detail, particularly as to whether or not there was ever any agreement for repayment by the ward or his wife. We directed counsel for the guardian to give the Commonwealth notice of the ward's objection and allowed the Commonwealth 20 days to file supporting data concerning its claim. No such supporting information has been forthcoming and no appearance has been entered on behalf of the Commonwealth in the proceedings now before us.

Since the Commonwealth has failed to respond to the court's direction, we may either dispose of the claim at this time and permit the offended party to appeal, or defer ruling until the guardian files its account, at which time the Commonwealth may press its claim for payment and an adjudication can be had at that time. We choose to follow the first alternative.

The Mental Health Act of June 12, 1951, sections 701 as amended, 1966 (Sp. Sess. no. 3), October 20, P. L. 96, 50 PS §4501, et seq., provides that the costs of care for a patient in a mental hospital can be assessed against various parties depending upon the type of commitment and the order of court, if any, concerning the payment of the cost of care. The same is true with respect to the Mental Health-Mental Retardation Act of 1966.

From the records in this court, we note that the order of commitment entered January 24, 1959, directed that the cost of maintaining the patient at the Harrisburg State Hospital should be paid from the "patient's estate." From the certified statement filed by the Commonwealth with the guardian of the estate, we note that all subsequent hospitalizations were pursuant to that original order entered in 1959. According-

ly, notwithstanding the Commonwealth's unexplained failure to properly document its claim, especially where the court provided it with an opportunity to do so, we will hold that the proof of this claim is adequate.

The ward's attorney also disputes the payment of this claim on the ground that the collection of the major portion of the claim is barred by the statute of limitations. The general rule is that the statutes of limitations do not run against the Commonwealth where it is suing in its sovereign right: 22 P.L.Encyc., Limitation of Actions, 402, §7. Case law involving factual situations where the Commonwealth has attempted to collect funds due for the maintenance of persons in State hospitals clearly holds that the statute is not a bar to the collection of those amounts: Erny's Estate, 337 Pa. 542 (1940); Geissler's Estate, 35 Berks 145 (1943), and Low Estate, 15 D. & C. 2d 375 (1957).

Accordingly, we hold that the Commonwealth's claim must be paid from the incompetent's estate.

## 2. CLAIM OF ESTELLA REDDING

Estella R. Redding is the wife of the incompetent. Nearly all of the incompetent's estate consisted of real property held as tenants by the entireties with his wife. This real estate was encumbered by various tax liens and judgments. When the real estate was sold pursuant to court order, the liens were discharged by payment to permit the guardian to convey marketable title. The liens were discharged from the proceeds of sale prior to any division thereof between the ward and his wife.

One of the judgments discharged in this manner was a claim of the Commonwealth for the care and support of a child of the ward and his wife at Pennhurst State School and Hospital.

The ward's wife now claims reimbursement of one-

half of the amount used to discharge the claim in the sum of $706.75. If the claim is ordered paid, the net result will be that the ward will have paid the entire amount of the judgment.

At common law, the father had the primary liability for the support and care of his children. The Act of June 1, 1915, P. L. 661, 71 PS §1783, imposed a statutory liability for maintenance of inmates in an institution maintained in whole or in part by the Commonwealth upon " [t]he husband, wife, father, mother, child, or children" of such inmate without specifying any priority as among those persons. This statute has been held to be in derogation of common law: Commonwealth v. Ray, 55 D. & C. 408 (1945), and Commonwealth v. Schmidt, 70 D. & C. 335 (1949). Section 502 of the Mental Health-Mental Retardation Act of 1966 simply provides that liability for such indigent persons is imposed "upon any person owing a legal duty to support the person admitted." A similar provision appears in section 701 of the Mental Health Act of 1951. The provisions of the Act of 1915, supra, are fully applicable notwithstanding the provisions of section 701 of the Mental Health Act of 1951 and section 502 of the Mental Health-Mental Retardation Act of October 20, 1966 (Sp. Sess.) P. L. 96, 50 PS §4501. See Rabe Estate, 437 Pa. 72 (1970). In Commonwealth v. Ford, 30 D. & C. 2d 490 (1963), the mother as well as the father have been held to be separately and jointly liable for their son's support while in a State hospital. Therefore, it seems clear that the Commonwealth could collect its claim in this case from the ward or his wife or both of them, jointly.

Now that the claim has been paid, the ward's wife seeks to recoup her "loss." It is very doubtful that such a claim can be determined in this proceeding. To resolve it here would be to determine the rights between

the husband and wife inter se. We are confronted at the outset by the Act of June 8, 1893, P. L. 344, 48 PS §111, which prohibits the wife from suing her husband civilly except to protect and recover her separate property or, under certain circumstances, to recover her separate earnings or property: Act of April 11, 1856, P. L. 315, 48 PS §112. In effect, Mrs. Redding's claim here is a claim against her husband who, she says, has been benefited by the payment of this claim from the proceeds of jointly held real estate. To permit the payment of such a claim in this proceeding would be a circumvention of the provisions of the Act of 1893, supra.

Since the Commonwealth's judgment was paid from the proceeds of the sale of jointly held property, since the mother as well as the father is responsible under statutory law for the maintenance of an indigent inmate at a State hospital and since Mrs. Redding's right to recover this sum is far from clear, we will direct that the claim of Mrs. Redding be denied as a claim against the ward's estate.

### 3. CLAIM OF COUNTY OF ADAMS FOR PAST MAINTENANCE

The ward in this case was committed under section 410 of the Mental Health-Mental Retardation Act of October 20, 1966, 50 PS §4410, to Harrisburg State Hospital in lieu of sentence for a crime of which he had been convicted. Pursuant to the provisions of section 505 of the same act, the County of Adams has paid for the maintenance of the ward since his commitment under section 410. The county now claims reimbursement from the ward's estate in the sum of $12,916.46. The ward contests the payment of this claim.

Under subsection (c) of section 505, the county may recover moneys expended by it from the mentally dis-

abled person "or" the person owing a legal duty to support such mentally disabled person. Although the Act of 1915, supra, seems to make the spouse of an inmate liable for his support, we need not consider that aspect in this proceeding because this claim is by the county against the mentally disabled person's estate and we are, therefore, not required to adjudicate the rights of the inmate and his spouse inter se; nor would we in this proceeding. See discussion of Claim of Estella Redding, supra.

Mr. Redding was committed to the hospital in lieu of sentence. It was argued in the prior proceeding before us that his commitment was illegal. The commitment order was entered November 7, 1969. That was a final appealable order. No appeal was taken. The same attorney representing Mr. Redding at this time represented him at the time of the commitment order. We hold that the alleged illegality of the commitment cannot be raised in this proceeding because it is a collateral matter. This is especially true in view of the broad and all-encompassing provisions of section 426(b)(1) of the Act of October 20, 1966, P. L. 96, 50 PS §4426.

It is also contended that it is unfair and unconstitutional to make the ward pay for his maintenance because he was sent to a hospital whereas, if he had been sent to prison, he would not have been compelled to pay for his maintenance. Whether this argument was raised in the case of Commonwealth v. Evans, 253 Pa. 524 (1916), and Heine's Estate, 24 D. & C. 681 (1935), we do not know, but both cases are authority for the proposition that the county can collect for the maintenance of an inmate from the inmate's estate where there has been a commitment as the result of criminal proceedings. While neither of those cases deals with the precise question raised by the proceed-

ings now before us, we are satisfied that the statutory authority for the collection of the costs of maintenance in such cases is not in derogation of any constitutional provisions. The commitment under the provisions of the Mental Health Act is for treatment and rehabilitation. It is for the protection and welfare of the subject, as well as for the protection and welfare of society. In fact, it could be argued forcefully that the subject has a constitutional right to treatment in lieu of imprisonment if the facts justify such a disposition. Furthermore, in other jurisdictions where similar statutory provisions have come under attack on constitutional grounds, those statutory provisions have been upheld. See Department of Mental Health v. Pauling, 47 Ill. 2d 269, 265 N.E. 2d 159 (1970); State v. Estate of Burnell, 165 Colo. 205, 439 Pac. 2d 38 (1968); and State v. Kosiorek, 5 Conn. Cir. 542, 259 Atl. 2d 151 (1969).

Finally, the ward has contended that if the county can collect the cost of maintenance, then such costs should be paid from the proceeds of the sale of the entireties property. While no mention was made of the provisions of the Act of June 1, 1915, supra, in the ward's argument, it is clear that this would be the basis upon which such an argument could be founded. The difficulty is that the entireties property no longer exists. The county is looking for reimbursement from the ward's separate estate. The guardian holds the share of the ward in the proceeds of the sale of entireties property. The division of those proceeds was authorized by order of court at the time of the sales were consummated and those orders were affirmed in our opinion of July 7, 1972. Exceptions were filed to that order and an order was entered overruling those exceptions. No appeal was taken from the final order.

Moreover, to compel the wife to contribute to the cost of maintenance of her husband under conditions such as are present in this case could very well constitute an unconstitutional deprivation of the wife's property without due process of law. She is an innocent party in the criminal proceedings against her husband. To compel her to contribute to his support under such circumstances would be unconscionable if not unconstitutional.

For the foregoing reasons, we hold that the disputed claim of the County of Adams for past maintenance should be paid from the incompetent's estate.

## 4. COUNTY OF ADAMS CLAIM FOR FUTURE MAINTENANCE

The guardian lists among the claims submitted to it, one from the County of Adams for additional and future maintenance. This claim cannot be considered in this proceeding for two reasons: First, the county is liable in the first instance under the provisions of the Mental Health-Mental Retardation Act for the payment of current maintenance for Mr. Redding and, secondly, this is not a "contested" claim, because there is no *claim* limited either in amount or time. In the case of Middleton Estate, 1 D. & C. 2d 162 (1954), a trustee was seeking authority to make certain investments in the future. It was held that this was not a dispute or controversy the court could settle under section 945 of the Fiduciaries Act, corresponding to section 416 of the Incompetents Estates Act. The same reasoning must apply here. Accordingly, the payment of this claim will be denied without prejudice to the county to seek payment either upon an accounting by the guardian or under the circumstances permitted in the county's claim for past maintenance, supra.

## DECREE OF COURT

And now, November 14, 1972, petitioner, Adams County National Bank, Guardian of the Estate of Wilbur V. Redding, an alleged incompetent, is hereby authorized and directed to pay from the income in the ward's estate and, to the extent necessary, from the principal thereof, $1,276.10 to the Commonwealth of Pennsylvania and $12,916.46 to the County of Adams in satisfaction of two of the claims set forth in paragraph five of the petition filed in this court under the provisions of section 3323 of the Probate, Estates and Fiduciaries Code.