**M. E. OLLERTON, Supervisor, Division of Institutional Accounts, Utah State Hospital, Plaintiff and Appellant,**

v.

**Steve DIAMENTI (an incompetent) and Lowell D. Nielson, Defendants and Respondents.**

**No. 13399.**

Supreme Court of Utah.

April 29, 1974.

Vernon B. Romney, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for plaintiff-appellant.

James Therald Jensen, S. J. Sweetring, Price, for defendants-respondents.

CALLISTER, Chief Justice:

Plaintiff, a representative of the Utah State Hospital, initiated this action against the guardian of Steve Diamenti to recover the costs of his care and treatment in the sum of $13,315. Plaintiff further sought an order compelling the guardian to make payments of $589.20 per month for all future care. The trial court ruled that no payments were required by reason of Section 64–7–54, U.C.A.1953, which specifically excluded the provisions of Chapter 7, Title 64, in regard to the methods for the commitment and care of the criminally insane, Chapter 48 of Title 77. The trial court reasoned that the Code of Criminal Procedure, Title 77, Chapter 48, did not provide for the payment of the care of a person declared insane and committed thereunder to the Utah State Hospital, and that Section 64–7–6, U.C.A.1953, was not applicable to the estate of a person criminally committed to the hospital; and therefore, there was no statutory ground to compel payment. Plaintiff appeals.

Steve Diamenti was charged with assault with intent to commit murder. Prior to trial he was declared insane and committed to the state hospital to remain there in custody until he should become sane, whereupon he was to be returned to the original custody, and all proceedings which had been suspended should be resumed, Section 77–48–5, U.C.A.1953, as amended 1955.

Plaintiff's claim for recovery is under Chapter 7, Title 64, which deals with the Utah State Hospital, the primary facility for the treatment of those having psychiatric or other disease which substantially impairs their mental health.[1] Plaintiff relies specifically on Section 64–7–6, U.C.A.1953, which provides that the actual expense for the care of a patient in the Utah State Hospital shall be paid by the guardian of a patient, who has funds that may be used for such purpose.

Plaintiff concedes that the care and maintenance of a person convicted of a crime is assumed by the State. He urges that since Mr. Diamenti was adjudged insane and the proceedings were suspended, there has been no criminal commitment pursuant to which the State must bear the costs of care. Mr. Diamenti is merely an ill person, and his guardian should pay the costs of his medical care and treatment.

Section 64–7–54, U.C.A.1953, provides:

Nothing contained in this act shall be construed to alter or change the method presently employed for the commitment and care of the criminally insane as provided in Chapter 48 of Title 77, Utah Code Annotated 1953.

This statute, in effect, provides that the regular manner [2] of caring for those who have been declared insane under the Criminal Code of Procedure shall not be changed by the chapter dealing with the Utah State Hospital. With the exception of Section 8, concerning preliminary examination, Chapter 48 of Title 77, does not provide that a person who has been criminally committed to the state hospital must pay for his care. Mr. Diamenti was not involuntarily hospitalized under the standards set forth in Section 64–7–36, U.C.A.1953, as amended 1971; he was declared "insane" [3] and under the mandate of Section 77–48–5, U.C.A.1953, he was committed to the hospital and the criminal proceedings were suspended. Although insane, he will be detained in custody under the law to answer for his crime upon becoming sane. his detention in the hospital. is a consequence of his committing a crime; otherwise, although his mental condition were the same, he might not be so confined in the present facility. His commitment to the state hospital is part and parcel of the administration of the criminal law. His bail was exonerated upon commitment to the hospital (Section 77–48–7, U.C.A.1953), and upon being certified sane, he will be brought to trial (Section 77–48–5, U.C.A.1953). His detention is pursuant to the provisions of the Criminal Code, and Section 64–7–6 is inapplicable.

The judgment of the district court is affirmed.

HENRIOD, and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting).

The position of the defendant in this case is based on the fallacious assumption that Mr. Diamenti is held in the state hospital as a criminal and under criminal proceedings. The fact is otherwise. In a separate proceeding, which had no concern whatsoever with his guilt or innocence of crime, he was found to be incompetent and unable to stand trial; and was therefore committed to the state hospital for hospitalization and treatment, likewise unconcerned with his guilt or innocence of crime. He is presumed to be innocent. Insofar as criminality is concerned, his sta-

---

1. Sec. 64–7–28(a), U.C.A.1953, as amended 1971.

2. See definition of "method" in Webster's New International Dictionary, 2d Ed.

3. See State v. Poulson, 14 Utah 2d 213, 215, 381 P.2d 93 (1963) for a definition of this term.

tus is no different than any other person unconvicted of crime; and his relationship to the hospital is just the same as any other patient who is involuntarily committed. He remains so committed unless and until he is sufficiently recovered that the superintendent approves his release. Only when and if this occurs, will any aspect of criminal procedure have application to him.[1]

It is to be noted that Chapter 48, Title 77, which deals with the commitment and care of the criminal insane, expressly provides for the costs of a *preliminary examination* into a defendant's sanity *at public expense*. But significantly, it does not provide that the State pay the expenses of one who is subsequently committed, unless he is impecunious.

Section 77–48–8 provides:

Expenses of inquiry, how paid.—The expenses of the examination and of the sending of such persons, save convicts in the state prison, to and from the Utah state hospital shall be in the first instance chargeable to the county from which they are sent. But the county may recover them from the estates of any such persons, or from a relative legally bound to care for them, or from the county of which such persons may be resident. *Expenses of the examination and of the sending of an insane convict to and from the Utah state hospital must be borne by the state, if he is impecunious.*

There is nothing in that section to indicate that the State is obliged to pay the costs of maintenance of a person in Mr. Diamenti's position. But the contrary inference is to be drawn; and that his own estate should pay the costs if it can. Indeed it seems to me to be in accord with the most elementary concept of justice that

his estate should bear the cost, rather than to preserve it to heirs and next of kin whose claim therein should most certainly be subordinate to his own needs.

It is true that *after* a person has been convicted of a crime and committed to the state prison the State bears the cost of his maintenance; and likewise that if one so committed thereafter becomes insane, and is transferred to the state hosital, the cost of his maintenance is borne by the State. But the adjudications on this subject make a distinction between persons who have been convicted, and are therefore charges of the State, and persons who have *not been convicted of crime*. The Kentucky Supreme Court pointed out that one in such a position was not a "convict" and the State did not have the responsibility to support him.[2] The Connecticut Court made the valid and important observation that the legislature did not intend to confer a discriminatory favor on these patients by exempting them, or their estates, from costs of maintenance, while requiring others to bear them, adding that:

It is only just that public funds be made good for amounts expended on a person's behalf before his heirs or next of kin receive anything from the estate. (Citing cases.)

. . . "It is not necessary to extend charity to those who are able to support themselves. Indeed, it would be unreasonable to do so." . . .[3]

A number of jurisdictions have so held and I am not advised nor aware of any to the contrary.[4]

I can see no merit whatsoever to defendant's reliance upon Section 64–7–54, U.C. A.1953 which provides:

Construction of act.—Nothing contained in this act shall be construed to

---

1. U.C.A. Sec. 77–48–1 (1953) states: "No person while insane shall be tried, adjudged to punishment or punished for a public offense."

2. Briskman v. Central State Hospital, (Ky.), 264 S.W.2d 270.

3. State v. Kosiorek, 5 Conn.Cir. 542, 259 A.2d 151, 20 A.L.R.3d 363.

4. See similar reasoning by the Illinois court in the cases of In Re Estate of Schneider, 50 Ill.2d 152, 277 N.E.2d 870; and Department of Mental Health v. Pauling, 47 Ill.2d 269, 265 N.E.2d 159; and also in State v. Burnell, 165 Colo. 205, 439 P.2d 38, 33 A.L.R.2d 1257, and Wigington v. State Home and Training School, 486 P.2d 417, (Colo.).

alter or *change the method* presently employed for the commitment and care of the criminally insane as provided in chapter 48 of Title 77, Utah Code Annotated 1953.

It will be noted that that statute refers *only to the method* of commitment and care of the criminally insane; and that it says nothing whatsoever concerning how the expense of maintenance is to be borne and has no application to that problem.

Section 64–7–6, U.C.A.1953 deals with the subject of the costs of maintenance of patients in the state hospital in direct, general and all inclusive language, and makes no exception. It states:

. . . The division shall estimate and determine as nearly as may be the actual expense per annum of keeping and taking care of a patient in the hospital and such amount or portion thereof *shall be assessed to and paid by the* applicant, *patient*, spouse, parents, child or children who are of sufficient financial ability to do so, *or by the guardian of the patient who has funds of the patient that may be used for such purpose.*

and similarly Section 64–7–18 provides that:

Liability of estate of mentally ill person.—The provisions herein made for the support of the mentally ill at public expense shall not release the estate of such persons from liability for their care and treatment, and the division of mental health is *authorized and empowered to collect from the estate of such persons* any sums paid by the state in their behalf.

In accordance with what is said above concerning the status of Mr. Diamenti as one not convicted of crime, it is my opinion that the State is correct in its contention that by reason of the statutes just quoted he (and his guardianship estate) are responsible for the reasonable expenses of his maintenance in the state hospital. [All emphasis added.]

ELLETT, J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.