Dale Tooley District Attorney West Side Court Building 924 West Colfax Avenue Denver, Colorado 80204
Dear Mr. Tooley:
This opinion letter is in response to your November 12, 1980 letter, in which you submitted several questions concerning the status of a defendant sentenced to a community correctional facility under C.R.S. 1973, 17-27-105.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents four questions:
When a judge sentences an offender to a community correctional facility under C.R.S. 1973, 17-27-105, is the offender entitled to good time and earned time credits under C.R.S. 1973, 17-22.5-101 and 102 (Supp. 1979)?
 My conclusion is that the offender is entitled to good time credits but is not entitled to earned time credits.
When an offender sentenced to a community correctional facility under section 17-27-105 has completed his sentence, is he then subject to parole supervision pursuant to C.R.S. 1973,17-22.5-103 (Supp. 1979)?
 My conclusion is "no." It is my opinion that the parole provisions of section 17-22.5-103 apply only to those individuals incarcerated in the "correctional facilities at Canon City."
When an offender is sentenced to a community correctional facility under section 17-27-105, or is placed in such facility as a condition of probation, and the offender violates the terms of his probation or is rejected by the facility following initial acceptance, does the sentencing court have the authority to transfer the offender to the Department of Corrections to complete the term of the sentence imposed?
 My conclusion is "yes." The sentencing court may transfer the offender to the Department of Corrections to complete his sentence but may not increase the length of the original sentence.
If an offender is placed in a community correctional facility pursuant to section 17-27-105 and while in the facility incurs medical expenses or requires medical treatment, are those medical expenses and obligations the responsibility of the State of Colorado?
 My conclusion is "yes," but such costs as may be incurred are recoverable from the offenders on an "ability-to-pay" basis.
ANALYSIS
( ) The statutory provision governing the award of "good time" credits to persons sentenced for a crime committed on or after July 1, 1979 is found at C.R.S. 1973, 17-22.5-101 (Supp. 1979):
 Each person sentenced for a crime committed on or after July 1, 1979, whose conduct indicates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him shall be entitled to a good time deduction of fifteen days a month from his sentence. The good time authorized by this section shall vest quarterly and may not be withdrawn once it is vested. No more than forty-five days of good time may be withheld by the department in any one quarter. No person subject to the good time credits of article 20 of this title shall be eligible for a good time deduction authorized by this article.
(Emphasis added.)
By its terms, this statute has very broad applicability. It applies to any "person" who is "sentenced" for a crime and "confined" in an "institution or facility." The community corrections statute authorizes a sentencing judge to "sentence" certain offenders to a community correctional "facility." C.R.S. 1973, 17-27-105(1)(a). Further, the Colorado Court of Appeals has referred to a community correctional facility as a "place of confinement." See People v. Johnson,42 Colo. App. 350, 594 P.2d 601 (1979). Thus, an offender sentenced to a community correctional facility under C.R.S. 1973, 17-27-105
meets those general prerequisites for good time eligibility established in C.R.S. 1973, 17-22.5-101 (Supp. 1979).
The language of the earned time statute, C.R.S. 1973, 17-22.5-102
(Supp. 1979), however, is not all-inclusive. That statute provides in pertinent part as follows:
 (1) In addition to the good time authorized in section 17-22.5-101, earned time, not to exceed fifteen days for every six months of incarceration, may be deducted from the inmate's sentence upon a demonstration to the State Board of Parole by the inmate that he has made substantial and consistent progress in each of the following categories:
. . .
 (d) Progress toward the goals and programs established by the Colorado diagnostic program.
 (2) Pursuant to article 4 of title 24, C.R.S. 1973, the state board of parole, in cooperation with the department, shall develop objective standards for measuring substantial and consistent progress in the categories listed in subsection (1) of this section. . . .
 (3) The state board of parole shall review the performance record of each inmate and shall grant, consistent with provisions of this section, an earned time deduction from the sentence imposed.
(Emphasis added.)
First, the statute indicates that earned time eligibility is dependent upon the amount of time an offender is incarcerated. There is no definition of "incarceration" anywhere in title 17. The Colorado Supreme Court, however, has remarked that a sentence to a community correctional facility is not the equivalent of "incarceration":
 By enacting the community corrections statute, the General Assembly provided the sentencing judge with a broader range of alternatives and with a sentencing medium that is more severe than probation, but not as harsh as incarceration.
People ex rel. VanMeveren v. District Court, 195 Colo. 34,36, 575 P.2d 4, 6 (1978).
Second, among those categories in which an inmate must demonstrate substantial advancement in order to be eligible for earned time credits, is his progress toward the goals and programs established by the Colorado diagnostic program. The Colorado diagnostic program is integrally related to, and controlled by, the Department of Corrections. See
C.R.S. 1973, 17-40-101-107. Its function is to evaluate offenders at the "diagnostic center" and make assignments to the appropriate "correctional institution." C.R.S. 1973, 17-40-102. The "diagnostic center" is the intake unit at the correctional facilities at Canon City, C.R.S. 1973, 17-40-101 (1.5) (Supp. 1979); "correctional institution" is defined as "the correctional facilities at Canon City, the correctional facilities at Buena Vista, or any other institution established for the rehabilitation of male or female offenders." C.R.S. 1973,17-40-101(1) (Supp. 1979). Unlike the ordinary sentencing situation, an offender sentenced to a community correctional facility under section 17-27-105 is not remanded to the care and custody of the Department of Corrections and does not pass through the "diagnostic center." Compare C.R.S. 1973, 17-27-105with C.R.S. 1973, 16-11-301(1) (Supp. 1979)and C.R.S. 1973, 17-40-105. Thus an offender sentenced to a community correctional facility under section 17-27-105
would be unable to demonstrate the necessary progress in programs established by the Colorado diagnostic program — a prerequisite to earned time eligibility.
Finally, the earned time statute provides that the standards for measuring progress in the various categories are to be developed by the State Board of Parole in cooperation with the Department of Corrections. Charging these organizations with the responsibility for developing standards for earned time eligibility is a further indication that the legislature intended to limit such eligibility to offenders coming under the control of the department and the board of parole. As noted, an offender sentenced under section 17-27-105 is not under the supervision of the Department of Corrections; and, as will be explained below, he is not subject to parole supervision by the State Board of Parole.
In light of the rather restrictive language in the earned time statute, and the apparent vesting of control over earned time eligibility in the Department of Corrections, it is my opinion that earned time credits may not be awarded an offender sentenced to community correctional facilities under section 17-27-105.
( ) Your second question concerns the applicability of the new parole provisions to offenders sentenced to community correctional facilities. C.R.S. 1973, 17-22.5-103 (Supp. 1979) provides as follows:
 As to any persons sentenced for a class 2, class 3, class 4, or class 5 felony committed on or after July 1, 1979, the division of adult services shall provide a one-year period of parole supervision and assistance in securing employment, housing, and such other services as may effect the successful reintegration of such offender into the community while recognizing the need for public safety. The conditions of parole for any such person shall be established by the state board of parole prior to his release from incarceration. Upon a determination that the conditions of parole have been violated in any such parole revocation proceeding, the state board of parole shall order the return of the offender to the institution to which he was originally received for a period of six months. For second and subsequent revocations of parole, the offender shall be reincarcerated, but in no event shall any person spend more than one year under parole supervision and reincarceration as provided in this section and section 18-1-105, C.R.S. 1973. The good time deduction authorized by section 17-22.5-101 shall apply to periods of reincarceration provided for in this section.
(Emphasis added.)
Again, as with the earned time statute, the parole statute apparently contemplates parole supervision only for those offenders released from "incarceration," a type of confinement which our supreme court considers more harsh than a sentence to a community correctional facility. See People exrel. VanMeveren v. District Court, supra.
More importantly, however, the jurisdiction of the Division of Adult Services and the State Board of Parole is limited to supervision of offenders released from a "state penal" or "correctional facility." See C.R.S. 1973, 17-2-102(3) and C.R.S. 1973, 17-2-201(3) (Supp. 1979). "Correctional facility" for purposes of title 17 means "any facility under the supervision of the department in which persons are or may be lawfully held in custody as a result of conviction of crime." C.R.S. 1973, 17-1-102(1) (Supp. 1979). Those community correctional facilities to which a judge may directly sentence an offender under section 17-27-105, are not supervised by the Department of Corrections or the State of Colorado. They are operated by a unit of local government or a nongovernmental agency. Thus, offenders released from such facilities would not be subject to supervision by the State Board of Parole or the Division of Adult Services.
This exclusion from parole supervision of offenders sentenced under section 17-27-105 is understandable from a policy perspective. The purpose of parole supervision is to provide an offender with assistance in securing employment and housing and in reintegrating the offender into the community. See
C.R.S. 1973, 17-22.5-103 (Supp. 1979). To a large extent, this purpose overlaps with the purpose of a sentence to a community correctional facility. See C.R.S. 1973, 17-27-102(1).
( ) Your third inquiry was recently addressed by the Colorado Court of Appeals. In People v. Johnson,supra, the defendant was originally sentenced to a community correctional facility for a period not to exceed five years. He was subsequently rejected by the correctional facility for violation of his "client performance contract." The People filed a motion for revocation of the sentence to the correctional facility and a resentencing. This motion was granted and the defendant was resentenced to the Colorado State Reformatory for various terms, all exceeding his initial five-year sentence to the correctional facility. The defendant appealed the resentences and resultant increases in sentence terms.
The court of appeals held that "the transfer of place of confinement to the reformatory was valid, but the increased sentences must be vacated and the original sentence term reinstated." 594 P.2d at 602. In upholding the transfer, the court relied on C.R.S. 1973, 17-27-103(3). That statute provides in pertinent part as follows:
 If an offender is rejected by the corrections board after initial acceptance, the offender shall remain in the custody of the corrections board for a reasonable period of time pending receipt of appropriate orders from the judicial district or the department for the transfer of such an offender.
The court interpreted the words "judicial district" to mean the sentencing court. Thus the sentencing court could properly order a transfer from the correctional facility to the reformatory.
Johnson was apparently decided at a time when a sentencing court had the power to choose the state correctional institution in which an offender should be confined; under a 1979 amendment to the statute, the place of confinement within the state system is now determined by the executive director of the Department of Corrections. C.R.S. 1973, 16-11-301(1) (Supp. 1979). The reasoning of the Johnson opinion, however, appears equally applicable to the question of a sentencing court's authority to transfer an offender to the custody of the Department of Corrections. The court in Johnson found statutory authority for a sentencing court to make a transfer to a state correctional institution under the control of the department. I see no significant difference, given the analysis in Johnson, between a sentencing court's authority to order a transfer directly to a particular state institution and its authority to order such a transfer indirectly through the Department of Corrections. In either event, the offender is transferred from the custody of a community correctional facility to the custody of the Department of Corrections.Compare C.R.S. 1973, 16-11-308(1), with
C.R.S. 16-11-308(1) (Supp. 1979). In my opinion, therefore, a sentencing court has the authority, under the circumstances you describe, to transfer an offender from a community correctional facility to the Department of Corrections for the purpose of serving the remainder of his sentence.
( ) Your final question asks about the responsibility of the state for medical expenses incurred by an offender while confined at a community correctional facility.
The government has an obligation to provide medical care for those whom it is punishing by incarceration. SeeEstelle v. Gamble, 429 U.S. 97 (1976). This obligation is imposed because confinement strips an individual of the ability to provide himself with medical care. SeeEstelle v. Gamble, supra; Tunstall v.Rowe, 478 F. Supp. 87 (N.D. Ill. 1979). Offenders sentenced to a residential community correctional facility, while in a sense "confined," nonetheless are not incarcerated on a full time basis as are, for example, prisoners of the State Penitentiary. Thus, to the extent that an offender has access to community medical facilities and personnel, it is my opinion that the obligation to seek medical treatment and the responsibility for medical expenses rests in the first instance with the offender. Indeed, even individuals totally confined are ultimately responsible for the cost of medical care. SeeColorado v. Estate of Burnell, 165 Colo. 205,439 P.2d 38, appeal dismissed per curiam, 393 U.S. 13
(1968). See also C.R.S. 1973, 17-20-117 (Supp. 1979).
The more difficult question concerns the financial obligation of the state with respect to those offenders who are, in effect, indigent or partially indigent. This inquiry again depends on whether the offender's confinement in the facility "strips" him of his ability to provide himself with medical care. If it does, the state is constitutionally obligated to provide him with medical care. Estelle v. Gamble, supra.
It is difficult to assess whether confinement in a community correctional facility is so restrictive as to reach the level that obligates the state to provide medical care as a matter of constitutional law. As the Colorado Supreme Court has recognized, we are dealing with a "hybrid" statutory scheme.See People ex rel. VanMeveren v.District Court, supra. Clearly an offender's ability to provide medical care for himself is restricted because of his confinement to a community correctional facility. His ability to obtain a job is limited as is the job market within which he may seek employment. Moreover, the act creating the community correctional program contemplates that the state bear the financial responsibility for the care and maintenance of offenders sentenced to a community correctional facility. Prior to amendment in 1979, as part of their contract or agreement with a community correctional authority, state judicial districts were required to reimburse the applicable authority up to $25 per day for each offender at a facility. See C.R.S. 1973,17-27-105(4). This provision was repealed by the legislature in 1979, and a new section was added to the act. See
C.R.S. 1973, 17-27-113 (Supp. 1979). Section 17-27-113 also contemplates the allocation and distribution of state funds to community correctional facilities. Thus, the legislature apparently intended the state to be obligated for the care of indigent offenders sentenced to residential community correctional facilities. In light of these considerations, it is my conclusion that the state is obligated to provide reasonable and necessary medical care for such offenders; but, also, as in the case of individuals incarcerated at the State Penitentiary, those offenders confined at a community correctional facility who have a job or other financial resources should reimburse the state on an ability-to-pay basis for the reasonable cost of their medical care. See C.R.S. 1973., 17-27-107(1).[1]
SUMMARY
To briefly summarize my opinion, an offender sentenced to a community correctional facility under C.R.S. 1973, 17-27-105 is entitled to good time credits but is not entitled to earned time credits. Such an offender is not subject to parole supervision following his release from a community correctional facility. A sentencing judge may transfer an offender from a community correctional facility to the Department of Corrections under the circumstances you describe. And finally, the state is ultimately responsible for reasonable and necessary medical expenses incurred by indigent offenders sentenced to a community correctional facility.
Very truly yours,
 J.D. MacFARLANE Attorney General
SENTENCE AND SENTENCING
C.R.S. 1973, 17-27-105
C.R.S. 1973, 17-22.5-101 et seq. (Cum. Supp. 1980)
JUDICIAL BRANCH DISTRICT ATTORNEYS DEPT. Denver DA
An offender sentenced to a community correctional facility under C.R.S. 1973, 17-27-105 is entitled to good time credits but not to earned time credits; he is not subject to parole supervision on release; he may be resentenced to the Department of Corrections under certain circumstances; the state is responsible for reasonable medical expenses incurred by indigents sentenced to a community correctional facility.
[1] The method by which the state must meet its obligation in this regard is not prescribed by statute. This may well be a subject covered by the contracts entered into between judicial districts and community correctional facilities.